**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| THEODOROS GEORGE DIMOPOULOS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action |
| | § | No. C-07-127 |
| ALBERT WILEY BLAKEWAY, ACTING | § | |
| DISTRICT DIRECTOR FOR THE | § | |
| CITIZENSHIP AND IMMIGRATION | § | |
| SERVICES, et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

On this day came on to be considered the motion of Defendants Albert Wiley Blakeway, Emilio T. Gonzalez, Michael Chertoff, Alberto Gonzales, United States Citizenship and Immigration Services ("USCIS"), and the United States Department of Homeland Security (together, "Defendants") to dismiss Plaintiff's Complaint and Application for Naturalization under 8 U.S.C. § 1447(b), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (D.E. 5).  For the reasons set forth below, Defendants' motion to dismiss is hereby DENIED.

## I.  Factual and Procedural Background

Plaintiff Theodoros George Dimopoulos was admitted to permanent residence in the United States on January 31, 1977. (Complaint, ¶ 1).  Mr. Dimopoulos resides in Corpus Christi, Texas, where he owns several local businesses.  (Complaint, ¶ 29).

In 1979, Mr. Dimopoulos was indicted in a three-count

indictment alleging a violation of RICO, RICO conspiracy, and that Mr. Dimopoulos conducted an illegal gambling business. (Id., ¶ 21). Mr. Dimopoulos was acquitted on the RICO conspiracy count but was convicted for violation of RICO, 18 U.S.C. § 1962(c), and for conducting an illegal gambling business. (Id.). On January 9, 1980, Mr. Dimopoulos received a suspended sentence and five years' probation for each of the two counts, to run concurrently. (Id., ¶ 22). Mr. Dimopoulos also paid a $500 fine. (Id.).

On July 27, 2004, Mr. Dimopoulos filed an application for naturalization as a United States citizen (Form N-400). (Id., ¶ 3). Mr. Dimopoulos' naturalization application was received by USCIS on August 2, 2004. (Motion to Dismiss, p. 2). With regard to his naturalization application, Mr. Dimopoulos was examined by USCIS on November 19, 2004. (Complaint, ¶ 4). He was called back for a subsequent examination on May 2, 2005. (Id.). At Mr. Dimopoulos' second examination before USCIS, he was served with a Notice to Appear before the Immigration Court for removal proceedings. (Id., ¶ 42). The Notice to Appear referenced Mr. Dimopoulos' 1980 RICO conviction and alleged that Mr. Dimopoulos is subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).[1] The first hearing before the Immigration

---

[1] 8 U.S.C. § 1227(a)(2)(A)(iii) states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." The Notice to Appear alleges that after Mr. Dimopoulos was admitted for permanent residence, he was convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(J).

Court regarding the removal proceedings was held on February 14, 2006.  (Id., ¶ 43).  Removal proceedings are currently ongoing.

On November 17, 2006, Mr. Dimopoulos filed the instant case in the United States District Court for the Western District of Texas, San Antonio Division.  Mr. Dimopoulos claimed that since Defendants had not acted on his naturalization application within 120 days of his first examination by USCIS, that the Court obtained jurisdiction over Mr. Dimopoulos' naturalization application pursuant to 8 U.S.C. § 1447(b).[2]  The statute states that if there is no determination on an applicant's naturalization application within 120 days after the applicant's agency examination, "the applicant may apply to the United States district court ... for a hearing on the matter.  Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b).  Plaintiff argues that since his initial

_____

(Complaint, ¶ 45).  That statute defines an "aggravated felony" as including a RICO offense for which a sentence of one year or more imprisonment may be imposed.  8 U.S.C. ¶ 1101(a)(43)(J).

[2]On February 1, 2007, Mr. Dimopoulos filed a motion to transfer the case to the United States District Court for the Southern District of Texas, Corpus Christi Division.  Mr. Dimopoulos filed the motion to transfer pursuant to 8 U.S.C. § 1447(b), which states that an applicant may bring an action in "the United States district court for the district in which the applicant resides".  Mr. Dimopoulos resides in Corpus Christi, Texas.  On February 27, 2007, the United States District Court for the Western District of Texas, Judge Orlando Garcia, granted Mr. Dimopoulos' motion to transfer, and the case was transferred to this Court on March 15, 2007 (D.E. 24).

examination took place on November 19, 2004, and USCIS still had not acted as of November 17, 2006, that over 120 days had passed and Plaintiff was entitled to invoke the Court's jurisdiction pursuant to 8 U.S.C. § 1447(b).

On November 30, 2006, less than two weeks after Mr. Dimopoulos filed his Complaint (D.E. 1), USCIS denied Mr. Dimopoulos' application for naturalization.   (Motion to Dismiss, Exh. 1, Decision on Application for Naturalization).

On January 22, 2007, Defendants filed their motion to dismiss Mr. Dimopoulos' Complaint.   Defendants advance the following three arguments in their motion to dismiss: (1) that Mr. Dimopoulos' Complaint is moot, since USCIS did act on Mr. Dimopoulos' naturalization application on November 30, 2006; (2) that Mr. Dimopoulos did not exhaust required administrative remedies; and (3) that the Court does not have jurisdiction to consider Mr. Dimopoulos' naturalization application while removal proceedings are pending, pursuant to 8 U.S.C. § 1429.   These arguments are addressed below.

## II. __Discussion__

### A. __Standard for 12(b)(1) Motions to Dismiss__

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case."   <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001); <u>see also</u> Fed. R.

Civ. P. 12(b)(1). A court may find lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996) (internal citations omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." Ramming, 281 F.3d at 161; see also McDaniel v. United States, 899 F.Supp. 305, 307 (E.D. Tex. 1995) ("On a 12(b)(1) motion, challenging the jurisdiction of the court, the burden lies with the party invoking the court's jurisdiction").

"A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998); see also Trans-Serve, Inc. v. United States, 2003 WL 23269560, *2 (W.D. La. 2003) ("Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.").

**B.   Standard for 12(b)(6) Motions to Dismiss**

Rule 12(b)(6) "[m]otions to dismiss are viewed with disfavor

and are rarely granted." <u>Test Masters Educ. Services, Inc. v. Singh</u>, 428 F.3d 559, 570 (5th Cir. 2005); <u>Lowrey v. Texas A&M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997).  In analyzing a Rule 12(b)(6) motion to dismiss, "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." <u>Beanal v. Freeport-McMoran, Inc.</u>, 197 F.3d 161, 164 (5th Cir. 1999).  The Court must also draw all reasonable inferences from those facts in the plaintiff's favor. <u>See</u> <u>Lovick v. Ritemoney Ltd.</u>, 378 F.3d 433, 437 (5th Cir. 2004). Dismissal is proper only where, viewing the facts in the light most favorable to the plaintiff, "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." <u>Campbell v. City of San Antonio</u>, 43 F.3d 973, 975 (5th Cir. 1995); <u>Lowrey</u>, 117 F.3d at 247 (stating that "[t]he question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief").

C.   **Case is Not Moot**

As noted above, Defendants argue that Mr. Dimopoulos' case is moot because USCIS did act on Mr. Dimopoulos' naturalization application, although they did not act until after Mr. Dimopolous filed his Complaint in federal court pursuant to 8 U.S.C. § 1447(b).  (Motion to Dismiss, pp. 5-7).  Mr. Dimopoulos argues that once he filed his Complaint, USCIS was stripped of its jurisdiction

to act on Mr. Dimopoulos' naturalization application, accordingly USCIS could not have effectively denied his application on November 30, 2006.  (Plaintiff's Response, pp. 4-6).

Per § 1447(b), when an applicant's naturalization application has not been decided within 120 days of his examination pursuant to 8 U.S.C. § 1446, a district court may assume jurisdiction over that naturalization application.  According to § 1447(b), "[s]uch court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."  8 U.S.C. § 1447(b).[3]  The majority of courts that have addressed the issue, including a Ninth Circuit en banc decision, have held that once the district court's jurisdiction is invoked pursuant to § 1447(b), <u>exclusive</u> jurisdiction over the naturalization application vests with the court, and USCIS loses the power to rule on the application.  <u>See</u> <u>United States v. Hovsepian</u>, 359 F.3d 1144, 1159-64 (9th Cir. 2004) (en banc) (holding that "[u]nder § 1447(b), the court has the last

_____

[3]The full text of § 1447(b) reads as follows:

If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.  Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b).

word by exercising <u>exclusive</u> jurisdiction over those naturalization
applications on which [USCIS] has failed to act in a timely
fashion") (emphasis added); <u>Castracani v. Chertoff</u>, 377 F.Supp.2d
71, 75 (D.D.C. 2005) ("When [the applicant] did file suit on July
1, 2004, this court obtained exclusive jurisdiction over his
naturalization application. ... Therefore, in the absence of any
evidence indicating that [USCIS] approved [the applicant]'s
application before July 1, 2004, [USCIS]'s adjudication of [the
applicant]'s application is invalid, and jurisdiction lies
exclusively with this court to either approve his application or
remand it to [USCIS] with instructions."); <u>Zaranska v. United
States Dep't of Homeland Security</u>, 400 F.Supp.2d 500, 504 (E.D.N.Y.
2005) ("the Court concludes that the filing of a petition in
district court pursuant to § 1447 strips the CIS of jurisdiction,
[accordingly,] a denial issued by the CIS after the petition is
filed cannot have any effect"); <u>Meraz v. Comfort</u>, 2006 WL 861859,
*3 (N.D. Ill. 2006) ("this court had exclusive jurisdiction to
decide [the applicant's] naturalization application from the time
[the applicant] filed this suit. ... [8 U.S.C. § 1447(b)] confers
jurisdiction on this court and prevents the USCIS from exercising
jurisdiction once the applicant has filed an action in the district
court."); <u>Dominguez v. Ashcroft</u>, 2004 WL 2632916, * 1 (D. Or. 2004)
(§ 1447(b) "authorizes the federal court to assume jurisdiction
when an application for naturalization has been pending over 120

days ... Once the federal court acquires jurisdiction, it is not divested by subsequent events, such as the agency's belated decision to take some action regarding the application.").[4]

Accordingly, once Mr. Dimopoulos filed his Complaint in federal court on November 17, 2006, USCIS no longer had the authority to consider Mr. Dimopoulos' naturalization application. USCIS therefore did not have the power to deny Mr. Dimopoulos' application on November 30, 2006. See, e.g., Meraz, 2006 EL 861859 at *3 ("Thus, although the USCIS purported to deny [the applicant's] application on March 30, 2005, the USCIS no longer had

---

[4]The Court notes Defendants' argument that some courts have found that once an applicant files a petition pursuant to § 1447(b), the court and the agency retain concurrent jurisdiction over the naturalization application. However, the majority of courts that have addressed the issue have found the opposite, that once the petition is filed, exclusive jurisdiction over the application vests with the court. Further, the only published Circuit Court opinion on the issue is Hovsepian, 359 F.3d at 1161-64, and this Court finds the Ninth Circuit's extensive analysis and reasoning in Hovsepian to be persuasive on this issue. See id. Moreover, the Hovsepian case is a published, en banc decision of the Ninth Circuit. In contrast, the only other Circuit Court to weigh in on the issue is the Fourth Circuit in Kia v. United States Immigration and Naturalization Serv., 175 F.3d 1014 (4th Cir. 1999), a short unpublished decision that is based partly on Ninth Circuit precedent that was distinguished in Hovsepian. See Zaranska, 400 F.Supp.2d at 503 ("Kia was decided prior to Hovsepian, relies on a Ninth Circuit decision that was distinguished and overruled in Hovsepian, and unlike Hovsepian, does not include any detailed analysis of § 1447 or its legislative history."); see also Kalla v. Chertoff, 2007 WL 415157, *3 (N.D. Ga. 2007). The weight of authority follows the Hovsepian decision, finding that once an applicant files his petition in federal court, exclusive jurisdiction vests with the court and USCIS is stripped of authority to act on the naturalization application. See, e.g., Castracani, 377 F.Supp.2d at 75; Meraz, 2006 WL 861859 at *3.

jurisdiction over [the applicant's] application.   The USCIS's
denial was ineffective, and this court retains jurisdiction to
decide [the applicant's] naturalization application.").   Since Mr.
Dimopoulos' application was not effectively denied by USCIS on
November 30, 2006, this case is not moot.

      D.    **Exhaustion of Administrative Remedies**

      Defendants also argue that Mr. Dimopolous' case should be
dismissed because Mr. Dimopoulos failed to exhaust his
administrative remedies.   Defendants essentially argue that Mr.
Dimopoulos has filed an appeal of USCIS' decision to deny his
naturalization application, and administrative remedies will not
have been exhausted until that appeal is complete.   (Motion to
Dismiss, p. 8).

      8 U.S.C. § 1421(c) states that "administrative review of
naturalization denials is a prerequisite for judicial review."
Saad v. Barrows, 2004 WL 1359165, *3 (N.D. Tex. 2004); see also 8
U.S.C. § 1421(c) (requiring a "hearing before an immigration
officer" before an applicant may seek judicial review of a denial
of a naturalization application).

      However, in this case, the administrative remedies requirement
of § 1421(c) is not applicable, because Mr. Dimopoulos is not
seeking judicial review of an agency decision.   Rather, as set
forth above, USCIS did not have the authority to deny Mr.
Dimopoulos' naturalization application on November 30, 2006.   Mr.

Dimopoulos had already filed his Complaint in federal court on November 17, 2006, and once he filed that Complaint, exclusive jurisdiction over his naturalization application vested with the district court.  See Hovsepian, 359 F.3d at 1159-64; Zaranska, 400 F.Supp.2d at 504; Meraz, 2006 WL 861859 at *3.  USCIS therefore lacked the power to consider Mr. Dimopoulos' naturalization application, and USCIS' November 30, 2006 denial of the application was an invalid act.  See id.  Accordingly, there is no "denial" for Mr. Dimopolous to appeal at the present time, and no need for Mr. Dimopolous to seek administrative review prior to filing his Complaint in federal court.

In this case, Mr. Dimopoulos was permitted to file his Complaint in federal court under U.S.C. § 1447(b), because USCIS did not take action on Mr. Dimpoloulos' naturalization application within 120 days of his initial interview.  When an applicant seeks "judicial intervention pursuant to 8 U.S.C. § 1447(b) ... there are no administrative remedies to exhaust." Alkenani v. Barrows, 356 F.Supp.2d 652, 655 (N.D. Tex. 2005); see also Meyersiek v. United States Citizenship and Immigration Service, 2006 WL 1582397, *2 (D. R.I. 2006) ("Because Petitioner invokes the Court's jurisdiction under 8 U.S.C. § 1447(b), there is no requirement that he exhaust administrative remedies.").

E.   **Pendency of Removal Proceedings**

Defendants' also argue that pursuant to 8 U.S.C. § 1429, this

Court is stripped of jurisdiction over Mr. Dimopoulos'
naturalization application because of pending removal proceedings
against Mr. Dimopoulos.[5]    (Motion to Dismiss, p. 8).    Mr.
Dimopoulos argues that the Court retains jurisdiction to determine
that he is prima facie eligible for naturalization, which he
maintains would allow him to petition an immigration judge to
terminate the removal proceedings.  (Plaintiff's Response, pp. 8-
17).   As set forth below, since it is undisputed that only the
Attorney General has the authority to naturalize Mr. Dimopoulos,
and 8 U.S.C. § 1429 bars the Attorney General from considering Mr.
Dimopoulos' naturalization application during the pendency of
removal proceedings, the Court hereby STAYS Mr. Dimopolous' case
until the conclusion of the pending removal proceedings.

### 1.   Statutory Language

8 U.S.C. § 1429 states as follows, in relevant part:  "no
application for naturalization shall be considered by the Attorney
General if there is pending against the applicant a removal
proceeding pursuant to a warrant of arrest issued under the
provisions of this chapter or any other Act".[6]  8 U.S.C. § 1421(a)

---

[5]On May 2, 2005, Mr. Dimopoulos was served with a Notice to
Appear before the Immigration Court for removal proceedings.
(Complaint, ¶ 42).  The first hearing before the Immigration Court
was held on February 14, 2006.  (Id., ¶ 43).  As of the present
time, removal proceedings are ongoing.

[6]For purposes of 8 U.S.C. § 1429, a Notice to Appear issued
under 8 C.F.R. § 239 shall be regarded as a "warrant of arrest."
8 C.F.R. § 318.1.

states that "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." Accordingly, "[t]he exclusive power to naturalize aliens rests with the Attorney General, ... and § 1429 bars the use of that power while removal proceedings are pending." Zayed v. United States, 368 F.3d 902, 906 (6th Cir. 2004).[7]

### 2.   The Court Retains Jurisdiction, but Stays the Case

Numerous courts have held that 8 U.S.C. § 1429 does not divest district courts of jurisdiction once removal proceedings have commenced, although the district court's power to grant relief is limited by the pendency of removal proceedings.[8] See, e.g., Meraz,

---

[7]8 U.S.C. § 1429 seeks to prevent concurrent consideration of a naturalization application and removal proceedings.  The Sixth Circuit addressed the history of the statute as follows:

> It is important to recall that while authority to naturalize aliens was vested in the district courts until 1990, removal of aliens was the province of the Attorney General.  And until 1952, when § 1429 was adopted, the usual practice had been 'for both the [removal] and naturalization processes to proceed along together until either [the] petitioner's [removal] or naturalization ipso facto terminated the possibility of the other occurring.' Shomberg v. United States, 348 U.S. 540, 543 (1955).  Section 1429 was designed to end this 'race between the alien to gain citizenship and the Attorney General to deport him.' Id. at 544.  That objective was accomplished by according priority to removal proceedings.

Zayed, 368 F.3d at 905.

[8]The Court notes a recent unpublished Fifth Circuit case, Ogunfuye v. Acosta, 2006 WL 3627144, *2 (5th Cir. 2006), which held that pursuant to 8 U.S.C. § 1429, the district court could not adjudicate an alien's naturalization application while removal

2006 WL 861859 at *4 ("Nothing in the statute [8 U.S.C. § 1429] indicates that Congress intended to deprive this court of jurisdiction once removal proceedings have commenced. Rather, the court retains jurisdiction, although the power of the court to grant relief may be diminished while removal proceedings are pending."); Dominguez, 2004 WL 2632916 at *1 ("Respondents now move to dismiss. They contend that, pursuant to 8 U.S.C. § 1429, the court is divested of jurisdiction because the government has now instituted removal proceedings ... I disagree. However ... I will

---

proceedings were pending. See id. ("because the Attorney General was barred by 8 U.S.C. § 1429 from reviewing Ogunfuye's application, by adjudging her claims for naturalization the district court would have been doing exactly what Congress stated it could not, which is rendering an opinion on an alien's prima facie naturalization claims."). Ogunfuye is distinguishable from the case at bar because in Ogunfuye, the applicant was arrested at her interview with USCIS, and removal proceedings commenced immediately thereafter. See id. In Ogunfuye, "§ 1429 [wa]s the sole cause for the 120-day delay." Id. In the instant case, Mr. Dimopolous' first interview with USCIS took place on November 19, 2004, and Mr. Dimopoulos was not served with the Notice to Appear until May 2, 2005. (Complaint, §§ 4, 5). Over 120 days had passed from the date of Mr. Dimopoulos' first interview before the government began the removal process against him. Unlike Ogunfuye, § 1429 was not the sole reason for USCIS' delay in adjudicating Mr. Dimopoulos' naturalization application. Rather, for over five months after Mr. Dimopoulos' USCIS interview, no removal proceedings were pending. Further, even after removal proceedings had commenced, USCIS actually tried to deny Mr. Dimopoulos' application, although they lacked the power to do so because Mr. Dimopoulos had already filed suit in federal court. However, regardless of the differences between the case at bar and Ogunfuye, per the Fifth Circuit's holding in Ogunfuye, this Court will not adjudicate Mr. Dimopoulos' naturalization application while removal proceedings are pending against Mr. Dimopoulos. Rather, the Court will stay this case pending resolution of the removal proceedings.

defer acting on the naturalization petition until a determination has been made on the issue of removability."); Trujillo v. Barrows, 2006 WL 3759903, *3 (E.D. Tex. 2006) (in a case addressing 8 U.S.C. § 1421(c), stating "[t]his court clearly has jurisdiction ... to consider Trujillo's application for naturalization. Nevertheless, because § 1429 bars the Attorney General from acting on an application for naturalization ... the Court finds that it is appropriate to stay this action until the conclusion of [pending] removal proceedings")[9]; Gatcliffe v. Reno, 23 F.Supp.3d 581, 583 (D. V.I. 1998) (in a § 1421(c) case, finding that § 1429 did not strip the court of jurisdiction during pending removal proceedings); Ngwana v. Attorney General, 40 F.Supp.2d 219, 321 (D. Md. 1999) (same); De Lara Bellajaro v. Schiltgen, 378 F.3d 1042, 1046 (9th Cir. 2004) (in a § 1421(c) case, interpreting "§ 1429 as limiting the scope of review and the relief available, but not as stripping district courts of jurisdiction solely because removal proceedings are pending", and stating that "[t]here is no hint in the language of § 1429 that it also applies to the courts.").[10]

---

[9]8 U.S.C. § 1421(c) provides that if an applicant's naturalization application is denied, after a hearing before an immigration officer, an applicant may seek a *de novo* review of the denial in district court. See 8 U.S.C. § 1421(c).

[10]The Court notes that not all courts have found that a district court has jurisdiction to review a naturalization application while removal proceedings are pending against the applicant. See Apokarina v. Ashcroft, 232 F. Supp. 2d 414 (E.D. Pa. 2002); Mosleh v. Strapp, 992 F. Supp. 874 (N.D. Tex. 1998). However, the Court finds that the plain language of the statute,

Based on the above, the Court finds that it does have jurisdiction over Mr. Dimopoulos' naturalization application. However, in light of 8 U.S.C. § 1429 and the pending removal proceedings against Mr. Dimopoulos, the Court hereby STAYS the case pending conclusion of those proceedings.

## III. Conclusion

Based on the above, the Court hereby DENIES Defendants' motion to dismiss Mr. Dimopoulos' Complaint and Application for Naturalization (D.E. 5), and the Court hereby STAYS the above-styled action until such time as the Court receives notice of the resolution of removal proceedings pending against Mr. Dimopoulos. The parties are charged with the duty of providing the Court with timely notice of the conclusion of such removal proceedings.

SIGNED and ENTERED on this 23rd day of March, 2007.

_____
Janis Graham Jack
United States District Judge

---

applying only to "the Attorney General," along with the weight of authority, supports the view that district courts are not stripped of their jurisdiction under 8 U.S.C. § 1447(b) when removal proceedings are pending, although removal proceedings limit the remedies available to the district court. See, e.g., Meraz, 2006 WL 861859 at *4. Accordingly, as noted, although the Court retains jurisdiction, the Court will stay the instant case pending resolution of the removal proceedings against Mr. Dimopoulos.